# Richmond

Montgomery Ward and Company v. Harry L. Young.

January 25, 1954.

Record No. 4135.

Present, All the Justices.

The opinion states the case.

*Broaddus, Epperly & Broaddus,* for the plaintiff in error.

*Clyde B. Lanham,* for the defendant in error.

Hudgins, C.J., delivered the opinion of the court.

Montgomery Ward and Company, defendant in the trial court, by this writ of error seeks reversal of a judgment for

$1,250 entered against it on the verdict of a jury, as compensation for personal injuries sustained by Harry L. Young, plaintiff, while a business visitor in defendant's warehouse.

On September 26, 1951, plaintiff went into the retail store, operated by defendant in the city of Martinsville, to purchase duct pipe fittings. G. R. Turner, defendant's employee in charge of this department, informed plaintiff that defendant had an assortment of pipe fittings in its warehouse. Turner, in the hope that he might sell the entire assortment, invited Young into the warehouse to inspect it. The two walked out of the retail store across an alley to a large warehouse approximately 45 feet long and 28 feet wide, in which defendant had stored a large assortment of merchandise, some in boxes and crates, for later removal to the retail department. This merchandise was so stacked or arranged that a space approximately four feet wide down the center of the room was left vacant and used as an aisle or walkway. The crates were approximately four feet high and to that extent obscured the light from the window near the rear of the room and the light from the electric bulbs.

Plaintiff followed Turner down this open space or aisle until they came within twelve feet of the rear of the room. Plaintiff remained standing in the aisle while Turner crawled over boxes and crates of merchandise to reach a bin in the rear where the pipes were stored. Turner, standing on the boxes, picked up an elbow, extended it toward plaintiff, and asked him if that was what he wanted. Plaintiff, in order to examine the pipe more closely, moved forward and, in so doing, stepped upon a power lawn mower, thereby causing the handle to fly up and strike him in the face, injuring him and causing the loss of six teeth.

Defendant's first contention is that the trial court committed reversible error in overruling its demurrer to plaintiff's motion and bill of particulars. This contention was not stressed in the oral argument, and even if it had been, we think the motion and bill of particulars fully complied

with Rule of Court 3:18 (d), in that they fairly informed defendant of the true nature of plaintiff's claim.

■ Defendant's second and third contentions are that the court erred in denying its motion to strike plaintiff's evidence and in overruling its motion to set aside the verdict of the jury on the ground that it was not supported by the evidence. These contentions require an examination of the evidence to ascertain whether it was sufficient to make the issue of defendant's negligence and the issue of plaintiff's contributory negligence questions for the jury.

Plaintiff was a business visitor in defendant's warehouse. This relationship imposed upon defendant the duty to exercise reasonable care to make the particular area reasonably safe for plaintiff's use, or to give him adequate warning of any hidden or concealed danger. "Reasonable care" or "ordinary care" is a relative term, and varies with the nature and character of the situation to which it is applied. The amount or degree of diligence and caution which is necessary to constitute reasonable or ordinary care depends upon the circumstances and the particular surroundings of each specific case. The test is that degree of care which an ordinarily prudent person would exercise under the same or similar circumstances to avoid injury to another.

Defendant, by its employee, Turner, expressly invited plaintiff to use this specific part of the aisle in the warehouse. In so doing, plaintiff had a right to assume that defendant had exercised reasonable care to see that that part of the aisle was reasonably lighted and in a reasonably safe condition, or to warn him of any concealed or hidden danger. On this issue the evidence is in conflict.

The evidence for defendant is that the passage way was well lighted. One witness for defendant said it was "as light as this courtroom," and that the power mower in the aisle was in plain view and could be seen from the entrance to the warehouse. On the other hand, the testimony for plaintiff was that the passage way was dark; that the boxes on one side of the aisle obscured the lights from the win-

dows and on the other side obscured the lights from the electric bulbs over and slightly to the side of the aisle to the extent that the power mower behind the post could not be easily seen.

A power mower is not an inherently dangerous object. Neither is a garden hoe, but if a hoe or mower is left lying with the handle on the floor, or off the floor at an angle, and a person steps upon either the hoe or the front part of the mower, the handle is likely to fly up and strike him. This is a natural and probable result of the condition of the object and one which under the circumstances disclosed by plaintiff's evidence, defendant, in the exercise of reasonable care, might have foreseen.

"If an occurrence is one that could not reasonably have been expected the defendant is not liable. Foreseeableness or reasonable anticipation of the consequences of an act is determinative of defendant's negligence." *Dennis* v. *Odend'-Hal-Monks Corp.*, 182 Va. 77, 80, 28 S. E. (2d) 4, 5.

The position of the mower, partially, if not wholly, concealed behind the pillar, is an added circumstance or condition from which inference of defendant's negligence may be drawn. As we view the evidence, it was sufficient to take the question of defendant's negligence to the jury.

The next question is, was plaintiff guilty of contributory negligence as a matter of law?

It is conceded that plaintiff was expressly invited to use this aisle in the warehouse to examine an assortment of pipe fittings. He followed Turner to the rear of the room and was standing still in the aisle when Turner climbed over boxes, picked up an elbow, and while on the boxes, above the level of the floor, held it up and asked plaintiff if that was the size he wanted. Turner's exact language is: "So he (plaintiff) says 'Just a minute' and stepped forward and I held it over for him to get and when he stepped forward to get the fitting he stepped on a lawn mower and the handle of the lawn mower hit him and knocked him, well, I'd say, out. And I jumped down off the boxes and

grabbed him and tried to help him to the dentist's office."

Defendant bases its contention that plaintiff was guilty of contributory negligence upon the fact that the part of the power mower upon which plaintiff stepped is approximately six inches high, and upon the admission of plaintiff that when he moved forward to get the pipe, he did not look down at the floor to see if it was clear of obstacles.

Defendant argues that a person while walking in a normal manner does not raise his foot as high as six inches. From this defendant infers that plaintiff saw the power mower and stepped upon it intentionally so that he could reach the object defendant's employee was extending to him.

One answer to this argument is that plaintiff was not walking in a normal manner. The instant before he was injured, he was standing still, and in response to Turner's invitation, was looking and reaching up to take the pipe which defendant's employee was handing him. In this strained or unusual position, plaintiff may or may not have raised his foot higher than he would have done had he been walking in a normal manner. The inference that defendant draws from these circumstances is plausible and one it had a right to urge that the jury consider, but such an inference is not conclusive that plaintiff saw the mower before he stepped on it in view of his positive denial of having done so.

Plaintiff admitted that he stepped forward to get the pipe without looking at the floor. His cross-examination on this point is:

"Q. You mean you stepped where you could not see?

"A. I didn't look down.

"Q. You said it was so dark you couldn't see?

"A. Yes.

"Q. If it was so dark you couldn't see how were you going to get the pipe he was going to hand you?

"A. That's why I was going to get it.

"Q. If he was handing it to you and it was so dark, how did you see the pipe?

"A. Down in the alley with the boxes up here you couldn't see down in the alley. You could see over the top of the boxes."

Plaintiff had a right to assume, in the absence of warning, that defendant had performed its duty to keep the premises in a reasonably safe condition for his business visit. He was not required to be on the lookout for dangerous obstacles, or objects in the passage way or aisle that he was expressly invited to use.

We said in *Raylass Chain Stores* v. *De Jarnette*, 163 Va. 938, 946, 178 S. E. 34: "To ask a prospective purchaser to keep one eye on the display of merchandise and the other eye on the floor to discover a stairway concealed by said merchandise is asking too much. The argument of defendant that the plaintiff, had she looked for the stairway, could have seen it, and that if she failed to look and was injured she is guilty of contributory negligence, is similar to the argument of the defendant in the *Le Cato case*, * * * (151 Va. 614, 144 S. E. 713). There it was contended, as it is here, that plaintiff's injury was the result of his failure to observe an alleged patent defect in a seat arranged for the sightseers at a county fair. The court's reply to that argument is as follows:

" 'Such an argument is based upon a mistaken theory of the law. The plaintiff had paid an entrance fee and was entitled to assume that the means of access to a seat and of egress or descent from it were not accompanied by any danger. He could not be required, without any knowledge or warning of danger, to be on the lookout for it. It was not negligence on the part of the plaintiff to fail to be on the lookout for a possible omission of the defendant to comply with its duty. *Hospital of St. Vincent* v. *Thompson*, 116 Va. 101, 81 S. E. 13, 51 L. R. A. (N. S.) 1025; *Virginia, etc., Co.* v. *Perkey*, 143 Va. 168, 130 S. E. 403. The duty to protect an invitee is necessarily co-extensive with the invitation.' " *Crocker* v. *WTAR Radio Corporation*, 194 Va. 572, 74 S. E. (2d) 51; *Comess* v. *Norfolk

*General Hospital,* 189 Va. 229, 52 S. E. (2d) 125; *Kirby* v. *Moehlman,* 182 Va. 876, 30 S. E. (2d) 548, and *Acme Markets* v. *Remschel,* 181 Va. 171, 24 S. E. (2d) 430.

The jury viewed the scene of the accident, heard the conflicting testimony of the witnesses, and found that defendant was negligent and that plaintiff was not guilty of contributory negligence. The trial judge, who heard the testimony and observed the demeanor of the witnesses on the stand, approved the verdict. Under similar circumstances, this court has said repeatedly that it will not sustain a motion to set aside a verdict on the ground that the evidence is insufficient to sustain it where the court is in doubt as to such sufficiency, nor will it sustain such motion merely because the court, if on the jury, would have returned a different verdict. The yardstick by which such questions are determined is that if reasonable men may differ on the conclusion to be reached, then the verdict must be sustained.

The judgment is

*Affirmed.*